J. K. AYRES v. GULF, COLORADO & SANTA FE RAILWAY COMPANY ET AL.

Decided May 26, 1905.

**1.—Railroads—Right of Way Over Public Domain.**

Where, prior to the Act of 1879 (Rev. Stats., art. 4423) expressly giving to railway companies a right of way through the public domain, a railroad company was by the charter granted to it empowered to construct its road through certain counties and to acquire a right of way therefor, this implied a grant of right of way over such tracts in its route as were a part of the public domain, the statutes providing at that time for the condemnation of private property only.

**2.—Same—Notice to Grantee in Patent.**

The railway company having taken actual possession of the right of way before the land was patented and the patent describing the survey as lying on the railroad, the grantees in the patent had notice of the company's rights and took subject thereto.

Appeal from the District Court of Montgomery. Tried below before Hon. L. B. Hightower.

*Dean, Humphrey & Powell,* for appellant.

*J. W. Terry, F. J. & R. C. Duff, N. A. Stedman* and *Gould & Morris,* for appellees.

GILL, ASSOCIATE JUSTICE.—This was an action of trespass to try title by which J. K. Ayres sought to recover a strip of land extending through the Wilson Lang survey in Montgomery County and claimed by the International & Great Northern Railroad Company as a part of its right of way. The Gulf, Colorado & Santa Fe Railway Company was made a party defendant as a joint occupant of a part of the strip in dispute. The defendants pleaded not guilty and limitation of five and ten years.

On a hearing the court instructed a verdict for defendants on the theory that the undisputed proof established limitation of ten years in favor of the International & Great Northern Railroad Company to a strip 120 feet wide extending through the Lang tract, and a judgment was rendered therefor. The costs were adjudged against defendants because the width sued for was 150 feet and the plaintiff recovered the difference. The plaintiff has appealed.

The facts are as follows: In 1866 the Great Northern Railroad Company obtained a charter from the State of Texas empowering it to construct a railroad through the county of Montgomery, and to other points not necessary to be disclosed. By 1871 it had constructed the road and begun its operation. In 1879 it sold its road and franchise to the International & Great Northern Company which continued the operation of the road up to the time of the bringing of this suit. Inasmuch as the defendant Santa Fe Company holds only under and by virtue of the rights of its codefendants we do not further state its connection with this case.

At the time of the construction of the road in question the land was a part of the public domain. The charter of the Great Northern Company was special and authorized it to acquire a right of way along its route, not to exceed 50 yards in width, but contained no express and unequivocal terms of donation in that respect.

The Wilson Lang survey was patented in November, 1873, and was described as lying on the Great Northern Railroad. In March, 1887, the plaintiff acquired the Lang survey, moved upon the tract, and has occupied it ever since. The town of Conroe, which is the county site of Montgomery County, was established after appellant's purchase, and is partly on the Lang survey. It is situated at the intersection of the roads of the two defendants. In 1888 or 1889 appellant platted a part of the Lang survey into town lots and began to sell them according to the plat. This plat recognized the right of way of the Great Northern as having a width of 65 feet from the center of the track each way, the lots abutting on the right of way according to that width.

Plaintiff testified that he saw the road in 1872. It was completed and the right of way cleared at that time. It has been kept cleared ever since in the general maintenance of the line, but a little wider now than then. The general width to which the right of way has been cleared and maintained through the Lang survey for years is at least 130 feet. Whether the possession of this, unenclosed as it was, was of such continuous character as to sustain the plea of limitation to the entire width, may well be doubted, but that the railway company, in the exercise of its charter powers, took possession of a right of way at least the width awarded by the court is to our minds established beyond controversy. This being true, if the authority given by the State to construct the road through Montgomery County and to that end to acquire a right of way not to exceed 50 yards in width carried with it either directly or inferentially, a grant of right of way through and over such tracts on its route as were yet a part of the public domain, the judgment should be affirmed, whatever may be the state of the proof on the issue of limitation.

Article 4423 of the Revised Statutes, which became a law in 1879,

expressly gave to railway companies a right of way through the public domain. Prior to that time there had been no express provision on the subject, so it follows that the defendants are unaided by the article cited or anything of a like nature preceding it. As stated, however, in Texas Central Railway Company v. Bowman, 97 Texas, 417, 79 S. W. Rep., 296, "the general laws which had been enacted regulating railways theretofore seem to have assumed rather than to have expressly declared the existence of the right over the lands of the State, for the provisions for the acquisition of such rights by purchase or condemnation applied only to private property. The general law passed in 1876 for the chartering of railway corporations omitted any express provision as to right of way upon lands belonging to the State, but as before regulated the acquisition of such right over private property." Justice Williams, after this comment upon the state of the law, proceeds to show that the absence of any provision for the acquisition of right of way over public properties pervaded all general legislation on the subject until the Revision of 1879. While it is not expressly held, nor was it necessary to be decided in the case cited, it is inferentially held that prior to the passage of the Act a charter authorizing the construction of a railway through a country held in part by private ownership and in part by the State, the general laws providing for acquisition of right of way from private owners, but leaving the company powerless against the lands of the State, impliedly granted the right to construct through and over the public domain. The grant is so necessary to the exercise of the general power conferred it is inevitably carried by the general terms of the grant. This is in accord with the elementary rule of construction that a power necessary to the exercise of a power already granted will be implied.

We are of opinion, therefore, that by its charter the Great Northern Company acquired the right to enter upon and appropriate so much of the public domain over which its route was projected as was necessary for its right of way, not to exceed the prescribed width, and that having done so the width actually appropriated was not affected by the subsequent grant by the State, of the Lang survey. By the description in the grant the grantees had actual notice of the railway's existence and its powers and of the fact that the Wilson Lang grant had been located along its line. They took subject to the rights acquired by the company.

As to the width of the right of way thus appropriated, we think the proof is undisputed that it amounted to at least as much as was awarded to defendants by the judgment of the court. In this view of the case all errors become harmless. We therefore do not notice the other assignments. Because, under the facts, the judgment could not have been otherwise, it is in all things affirmed.

The cross-assignment assailing the trial court's disposition of the question of costs is overruled.

*Affirmed.*